**NOTICE:**

Please be advised that this corrected document is filed in connection with the redaction of certain potentially confidential personal information in a document previously filed in your bankruptcy case by the creditor identified herein. This corrected document is otherwise identical to the original document in all respects. The substance of the document has not been changed in any way.

| UNITED STATES BANKRUPTCY COURT  MIDDLE DISTRICT OF PENNSYLVANI | PROOF OF CLAIM |
|---|---|

| Name of Debtor: | Debtor 1  Eric S Anderson<br>Debtor 2  Sharon E Anderson<br>Debtor 3<br>Debtor 4 | Case Number:<br>11-07274 |
|---|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
PNC Bank

☐ Check this box to indicate that this claim amends a previously field claim

Name and address where notices should be sent:
PNC Bank
P O BOX 94982
Cleveland, OH 44101
Telephone No. 866-622-2657

Court Claim Number: _____
(If known)

Filed on: N/A

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:**  $35,692.66

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

[X] Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** Money Loaned
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** xx-xx-xxxxxxxx ▮

   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim:** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

   **Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   [X] Other
   Describe: 2189 TABLE ROCK ROAD BIGLERVILLE, PA

   Value of Property: $0.00      Annual Interest Rate  0.00 %

   Amount of arrearage and other charges as of time case filed included in secured claim,
   if any: $2,825.60       Basis for perfection: Mortgage

   Amount of Secured Claim: $35,692.66      Amount Unsecured: $0.00

5. **Amount of Claim Entitled to Priority under 11 U.S.C 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim.

   ☐ Domestic support obligations under 11 U.S.C. 507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. 507(a)(4).

   ☐ Contributions to an employee benefit plan- 11 U.S.C. 507(a)(5).

   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. 507 (a)(7).

   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. 507 (a)(8).

   ☐ Other - Specify applicable paragraph of 11 U.S.C. 507 (a)(__).

   Amount entitled to priority:
   $ _____

   * Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date:<br>November 2, 2011 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/S/    Therese Green | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for upto 5 years, or both. 18 U.S.C. 152 and 3571

Prepared by:
PNC Bank - Consumer Loan Center
Mortgage Servicing
Mailstop P5-PCLC-01-I
2730 Liberty Avenue
Pittsburgh, PA 15222
Telephone 412-762-6728

Return to: PNC Bank - Consumer Loan Center
Mortgage Servicing
Mailstop P5-PCLC-01-I
2730 Liberty Avenue
Pittsburgh, PA 15222
Telephone 412-762-6728

UPI #

Image ID: ▮▮▮▮  Type: GEN
Recorded: 03/02/2007 at 11:04:19 AM
Fee Amt: $40.00 Page 1 of 3
Instr# ▮▮▮▮▮▮▮▮
Adams County, PA
Patsy S. Gochenauer Recorder of Deed
BK 4756 PG 266

OLNACS #


(Closed-End)

**PNC BANK**

THIS MORTGAGE is made on 02/16/2007.
The Mortgagor is ERIC S. ANDERSON, SHARON E. ANDERSON.
If there is more than one, the word "Mortgagor" herein refers to each and all of them.
The Mortgagee is PNC Bank, National Association.
The word "Borrower" means ERIC S ANDERSON, SHARON E ANDERSON.
If there is more than one, the word "Borrower" herein refers to each and all of them.
Borrower owes Mortgagee the sum of **Thirty-five Thousand One Hundred Sixty-nine Dollars And Fifty Cents**
(U.S. $ 35,169.50 ).
This debt is evidenced by Borrower's written obligation (referred to herein as the "Note"), dated 02/16/2007.

This Mortgage secures to Mortgagee: (a) the repayment of the debt evidenced by the Note, with interest and other charges as provided therein; (b) the payment of all other sums, with interest thereon, advanced hereunder for the payment of taxes, assessments, maintenance charges, insurance premiums and costs incurred to protect the security of this Mortgage; (c) the payment of all of Mortgagee's costs of collection, including costs of suit and, if permitted by law, reasonable attorneys' fees and expenses, if suit is filed or other action is taken to collect the sums owing or to protect the security of this Mortgage; (d) payment of any refinancing, substitution, extension, modification, and/or renewal of any of said indebtedness, interest, charges, costs and expenses; (e) the performance of Mortgagor's and/or Borrower's covenants and agreements under this Mortgage and the Note; and (f) the repayment of the debt evidenced by any note or agreement which was refinanced by the Note, to the extent that such debt is owed to Mortgagee and has not been paid. For this purpose, Mortgagor does hereby mortgage, grant and convey to Mortgagee the following described property, together with all improvements now or hereafter erected, and all easements, rights and appurtenances thereon, located at and known as:

| 2189 TABLE ROCK RD | BIGLERVILLE | | PA | 17307-9778 | ADAMS |
|---|---|---|---|---|---|
| Recording Date | | 04/16/1991 | | | |
| Deed Book Number | | Page Number | | 503 | |
| Tax Parcel Number | | | | | |
| Lot and Block Number | N/A N/A | Butler Twp  JKB | | | |

The word "Property" herein shall mean all of the foregoing mortgaged property.

To have and to hold the Property unto the Mortgagee, its successors and assigns, forever. Provided, however, that if Mortgagor and/or Borrower shall pay to Mortgagee the said debt, interest, and all other sums and perform all covenants and agreements secured hereby, then this Mortgage and the estate conveyed by it shall terminate and become void.

Warranty of Title. Mortgagor warrants and represents to Mortgagee that: (a) Mortgagor is the sole owner of the Property, and has the right to mortgage and convey the Property; (b) the Property is unencumbered except for encumbrances now recorded; and (c) Mortgagor will defend the title to the Property against all claims and demands except encumbrances now recorded.

Page 1 of 3

**Covenants.** Mortgagor promises and agrees as follows:

(a) Mortgagor will maintain the Property in good order and repair; (b) Mortgagor will comply with all laws respecting the ownership and/or use of the Property; (c) If the Property is part of a condominium or planned unit development, Mortgagor will comply with all by-laws, regulations and restrictions of record; (d) Mortgagor will pay and/or perform all obligations under any mortgage, lien, or security agreement which has priority over this Mortgage; (e) Mortgagor will pay or cause to be paid all taxes and other charges assessed or levied on the Property when due and, upon Mortgagee's request, will deliver to the Mortgagee receipts showing the payment of such charges; (f) While any part of the debts secured by this Mortgage remain unpaid, Mortgagor promises to obtain and keep in force property insurance and, if required by federal law, flood insurance on the Property. The property insurance must cover loss of or damage to the Property and must be in an amount sufficient to protect Mortgagee's interests; flood insurance must be of the type and in the amount required by federal law. Mortgagor agrees to provide Mortgagee evidence of required insurance. All policies must name Mortgagee as a loss payee/secured party and must provide for at least 10 days written notice to Mortgagee of reduction in coverage or cancellation. Mortgagor gives Mortgagee the right and power to sign Mortgagor's name on any check or draft from an insurance company and to apply the money to any debt secured by this Mortgage. This is limited to checks and drafts in payment of a claim under an insurance policy for loss or damage to the Property or for returned or rebated premiums on policies insuring the Property. Mortgagor does not have the right to, and agrees that Mortgagor will not, revoke the power of Mortgagee to make Mortgagor's endorsement. Mortgagee may exercise the power for Mortgagee's benefit and not for Mortgagor's benefit, except as otherwise provided by law; (g) If Mortgagor fails to keep in force the required insurance and/or fails to provide evidence of such insurance to Mortgagee, Mortgagee may notify Mortgagor that Mortgagor should purchase the required insurance at Mortgagor's expense. If Mortgagor fails to purchase the insurance within the time stated in the notice and/or fails to provide evidence of such insurance to Mortgagee, Mortgagee may purchase insurance to protect Mortgagee's interest, to the extent permitted by applicable law, and charge Mortgagor the cost of the premiums and any other amounts Mortgagee incurs in purchasing the insurance. THE INSURANCE MORTGAGEE PURCHASES WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE LESS COVERAGE THAN INSURANCE MORTGAGOR COULD PURCHASE OTHERWISE. Mortgagee may receive reasonable compensation for the services which Mortgagee provides in obtaining any required insurance on Mortgagor's behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with Mortgagee. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. If Mortgagor fails to perform any other duty or obligation required by these Covenants, Mortgagee may, at its sole option, advance such sums as it deems necessary to protect the Property and/or its rights in the Property under this Mortgage. Mortgagor agrees to repay Mortgagee any amounts advanced in accordance with this paragraph, with interest thereon, upon demand; (h) Any interest payable to Mortgagee after a judgment is entered or on additional sums advanced shall be at the rate provided for in the Note; (i) Mortgagee may make reasonable entries upon and inspections of the Property after giving Mortgagor prior notice of any such inspection; (j) Mortgagor will not sell, transfer ownership in, or enter into an installment sale contract for the sale of all or any part of the Property; and (k) The promises, agreements and rights in this Mortgage shall be binding upon and benefit anyone to whom the Property or this Mortgage is transferred. If more than one Mortgagor signs this Mortgage, each and all of them are bound individually and together. The covenants made in this section and Mortgagee's remedies set forth below shall not merge with any judgment entered in any legal action and shall apply until all amounts owed are paid in full.

**Default.** Mortgagor will be in default under this Mortgage: (a) if there is a default under the Note; (b) if Mortgagor breaks any promise made in this Mortgage; (c) if any Mortgagor dies; (d) if any other creditor tries to take the Property by legal process; (e) if any Mortgagor files bankruptcy or if anyone files an involuntary bankruptcy against any Mortgagor; (f) if any tax lien or levy is filed or made against any Mortgagor or the Property; (g) if any Mortgagor has made any false statement in this Mortgage; or (h) if the Property is destroyed, or seized or condemned by federal, state or local government.

**Mortgagee's Remedies.** Unless prohibited by law, if Mortgagor is in default under this Mortgage, Mortgagee may, at its option, after notice required by law, if any, declare due and payable the entire unpaid balance of the sums which are secured by this Mortgage and owing upon the Note. If Mortgagee so declares such entire balance due and payable, Mortgagee may take possession of the Property, collect any and all rents, apply said rents to the indebtedness secured by this Mortgage, foreclose the Mortgage, or take other action upon the Mortgage as permitted or provided by law to collect the balance owing. If a mortgage foreclosure action or any other action on this Mortgage is filed by Mortgagee, and/or if Mortgagee takes any action to protect or enforce its interest in any court, including Bankruptcy Court, Mortgagor agrees to pay to Mortgagee all expenses and costs of such action, including, if permitted by law, reasonable attorneys' fees to the maximum extent permitted by law.

**Remedies Cumulative.** If any circumstance exists which would permit Mortgagee to accelerate the balance, Mortgagee may take such action at any time during which such circumstance continues to exist. Mortgagee's remedies under this Mortgage shall be cumulative and not alternative.

**Delay in Enforcement.** Mortgagee can delay in enforcing any of its rights under this Mortgage or the Note without losing that right. Any waiver by Mortgagee of any provision of this Mortgage or the Note will not be a waiver of the same or any other provision on any other occasion.

**Assignment.** Mortgagee may sell, transfer or assign this Mortgage without Mortgagor's consent.

**Severability.** If any provision of this Mortgage is held to be invalid or unenforceable, such determination shall not affect the validity or enforceability of the remaining provisions of this Mortgage.

WITNESS the signing of this Mortgage on the date set forth above, intending to be legally bound.

Witness _Loretta Espinoza_  Mortgagor _Eric S. Anderson_

Witness _Loretta Espinoza_  Mortgagor _Sharon E Anderson_

Acknowledgment taken in the STATE OF PENNSYLVANIA, COUNTY OF _____

On this _16th_ day of _February_, _2007_, before me, _Ericka P. Campbell_, the undersigned officer, personally appeared _Eric S Anderson + Sharon E. Anderson_ known to me (or satisfactorily proven) to be the person(s) whose name(s) is (are) subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In Witness Whereof, I hereunder set my hand and official seal.

Signature _Ericka P. Campbell_

Title _A Notary Public_

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Ericka P. Campbell, Notary Public
Gettysburg Boro, Adams County
My Commission Expires Oct. 25, 2010
Member, Pennsylvania Association of Notaries

**Certificate of Residence**

I, _Loretta Espinoza_, do hereby certify that Mortgagee's precise residence is Consumer Loan Center, 2730 Liberty Avenue, Pittsburgh, PA 15222.

_Loretta Espinoza_
Agent for Mortgagee

Image ID: ▮▮▮  Type: GEN
Page 3 of 3
BK 4756 PG 268

Page _3_ of _3_

State of Pennsylvania } S.S.
Adams County

Recorded on this 2ND day of MARCH A.D. 2007 in the Recorder's office of Adams County in RECORD Book, Vol. 4756 Page 266. Witness my hand and official seal of Gettysburg, PA the day and year aforesaid.

_Patsy S. Gochenauer_ Recorder

# Direct Installment Loan Disclosure and Note

**PNC BANK**

Borrower: ERIC S ANDERSON
SHARON E ANDERSON

Lender: PNC Bank, National Association

Date: 02/16/2007

Items preceded by "☐" are not applicable unless marked "☒" or the equivalent.

## Truth-in-Lending Disclosures

| ANNUAL PERCENTAGE RATE The cost of the Borrower's credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost the Borrower. | Amount Financed The amount of credit provided to the Borrower or on the Borrower's behalf. | Total of Payments The amount the Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 7.443 % | $32,644.90 | $35,169.50 | $67,814.40 |

The Borrower's Payment Schedule will be:    e means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | $ 282.56 | Monthly, beginning 04/02/2007 |

**Itemization of Amount Financed**

Amount Financed
$ See Settlement Statement
(1) Amount given directly to Borrower
$ See Settlement Statement
(2) Amount paid on Borrower's account
$ See Settlement Statement
(3) Amount retained by Lender for
$ See Settlement Statement
(4) Amount paid to others on Borrower's behalf:
(a) to public officials
$ See Settlement Statement
(b) for credit insurance
$
(c) to See Settlement Statement
$
(d) to
$
(e) to
$
(f) to
$
(g) to
$
(h) to
$
(i) to
$

Prepaid Finance Charge
$ See Settlement Statement

Itemization of Amounts paid by Borrower at the time the loan is made:
(1) See Settlement Statement
(2)
(3)

**Security:** Lender is getting a security interest in deposits or property held by Lender, and:
☐ None.  ☐ Goods or property being purchased.
☒ Real Estate.  ☐

In addition, collateral (other than Borrower's principal residence) securing other obligations to Lender may also secure this Note.

**Security Interest Charges:**
☐ None  ☒ Filing Fees $ 70.50

**Variable Rate:** ☐ Not Applicable.
☒ This loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**Late Charge:** ☐ Not Applicable. ☒ If a payment is not paid in full within 15 days of its due date, Borrower may be charged the greater of $20.00 or 10% of the total payment.

**Prepayment:** If Borrower pays off early, Borrower ☐ may ☒ will not have to pay a penalty.

**Required Deposit Balance:** ☒ Not Applicable. ☐ The Annual Percentage Rate does not take into account any required deposit balance.

**Assumption:** If this loan is secured by a dwelling, someone purchasing that dwelling cannot assume the remainder of the loan on the original terms.

☐ If Borrower's participation in the automatic payment plan is discontinued for any reason, the Automatic Payment Plan Discount of ___ percentage points will terminate and may cause the rate to increase. Any increase in the rate will cause the amount of the payments to increase. For example, if your loan were for $10,000.00 at an initial rate of 13 1/2%, repayable in 48 monthly payments of $270.76, and the Discount terminated after 12 payments, the payment amount would increase to $ ___ for the remainder of the term of the Note. (The payment example assumes Borrower has not elected to purchase Credit Insurance.)

☐ If Borrower ceases to be eligible for the Employee Benefit Discount in the interest rate, the interest rate on this loan will increase to a rate calculated by dividing the interest rate stated in this Note by 95%. Any increase in the rate will cause the amount of the payments to increase. For example, if your loan were for $10,000.00 at an initial interest rate of 9.5%, repayable in 48 monthly payments of $251.23, and the Employee Benefit Discount terminated after 12 payments, the payment amount would increase to $322.67 for the remainder of the term of the Note. (The payment example assumes Borrower has not elected to purchase Credit Insurance.)

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

---

**Credit Insurance Is Not Required.** Borrower May Cancel Credit Insurance at Any Time Without Penalty. Credit Life Insurance and Credit Disability Insurance are not required to obtain credit, and will not be provided unless Borrower signs below and agrees to pay the additional cost(s). Insurance may be purchased on the life of one or two Borrowers. Credit Disability Insurance may be purchased on only one Borrower. If obtained through Lender the cost of the insurance for the original term of the credit is stated below. Lender may receive financial benefits from the Borrower's purchase of insurance. "Borrower" who is insured may not be a Co-Maker.

I want Single Credit Life Insurance which costs $ _____    Signature of Person to be insured for Single Credit Life Insurance

I want Single Credit Disability Insurance which costs $ _____    Signature of Person to be insured for Single Credit Disability Insurance

We want Joint Credit Life Insurance which costs $ _____
1. _____  2. _____
Signatures of Persons to be insured for Joint Credit Life Insurance

Borrower does not desire or is not eligible for credit insurance: *Eric S. Anderson*  *Sharon E Anderson*
Signature of Borrower

Notice to Borrower(s): The maximum amount of coverage which insured Borrower(s) will receive is set forth in the certificate or policy, as applicable. IF YOU HAVE SIGNED, ABOVE, STATING THAT YOU WANT CREDIT INSURANCE, THIS DOES NOT GUARANTEE YOU HAVE CREDIT INSURANCE. CREDIT INSURANCE MUST BE ELECTED USING A SEPARATE FORM. IF YOU CHOOSE TO ELECT INSURANCE COVERAGE A SEPARATE APPLICATION WILL BE PROVIDED TO YOU.

---

**Direct Loan Note Index.** The index is for convenience and reference. It shall not limit the meaning or scope of any paragraph or section. The numbers refer to the paragraph numbers of the Note.

| | | | |
|---|---|---|---|
| Acceleration of the outstanding balance | 14 | Daily balance | 7 |
| Application of payments | 8 | Daily interest rate | 7 |
| Assignment | 24 | Default | 14 |
| Attorneys' fees | 2, 22 | Definitions | 1 |
| Automatic payment plan | 4, 5 | Delay in enforcement | 16 |
| Borrower's responsibilities | 2, 14, 26, 27, 31 | Deposit | 23 |
| Changes in interest rate | 5 | Disputed debts | 29 |
| Closing costs | 2 | Early payment | 19 |
| Collateral | 18, 20, 23 | Employee Benefit | 5 |
| Collection expenses | 2, 22 | Finance charges | 7 |
| Communication concerning disputed debts | 29 | Flood insurance | 20 |
| Computing interest | 7 | Governing law | 28 |
| Court costs | 2, 22 | Heirs bound | 27 |
| Credit Insurance | 28 | Insurance | 26 |
| Credit reports | 30 | Insurance checks | 21 |
| | | Interest after maturity and judgment | 13 |
| | | Interest rate | 2, 5, 7, 13 |
| | | Late charges | 8 |
| | | Legal fees | 2, 22 |
| | | Lender | 1 |
| | | Lender's right to endorse checks | 21 |

| | | | |
|---|---|---|---|
| Monthly payment | 3, 6 | Release of borrowers | 17 |
| Monthly payment changes | 6 | Release of security | 17 |
| Multiple parties | 25 | Remedies | 14 |
| Paid in full checks | 29 | Return Check Charge | 11 |
| Payment application | 8 | Security interest | 18, 20, 23 |
| Payment Due Date | 3 | Security interest charges | 18 |
| Payment Schedule | 3, 6 | Security interest in deposits | 23 |
| Personal representatives bound | 27 | Variable rate | 5 |
| Prepayment | 19 | Waiver | 12, 15 |
| Prepayment Fee | 2, 11 | | |
| Promise to pay | 2 | | |
| Property insurance | 20 | | |

# Direct Installment Loan Disclosure and Note

Borrower: ERIC S ANDERSON  
SHARON E ANDERSON

Lender: PNC Bank, National Association

Date: 02/16/2007

## Direct Installment Loan Note

**1. Definitions.** In this Note, the word "Borrower" means each and all of those who sign this Note and each and all of those who endorse the check which disburses the "Amount given directly to Borrower."
The word "Lender" means PNC Bank, National Association or any person to whom this Note has been transferred.

**2. Borrower's Promise to Pay.** To repay this loan, Borrower promises to pay to Lender $ 35,169.50 , with interest on the unpaid balance from the date funds are advanced until paid in full. Interest shall be paid at the rate per annum of 7.440 %. Borrower promises to make payments in accordance with the payment schedule stated in this Note. Borrower promises to pay to Lender all other amounts which may become due under the terms of this Note, including, if applicable, Credit Insurance Premiums, Prepayment Fee, Late Charges and Costs of Collection. Borrower agrees to make payments at the place designated by Lender. Borrower may also be required to pay to Lender certain other charges before Lender will give any money to Borrower. These charges, if any, are stated on page one in "Itemization of Amounts paid by Borrower at the time the loan is made" and/or in the Settlement Statement.

**3. Payment Schedule.** Borrower agrees to pay to Lender the amounts due under this Note:
[X] in uninterrupted monthly payments: 239 payments of $ 282.56 and a final payment, which will be billed by Lender, of all remaining unpaid amounts. Payments will be due on the same day of each month starting on 04/02/2007.
Payments will continue until all amounts due are paid.
[ ] in uninterrupted monthly payments, except for the months shown:
payments of $ and a final payment, which will be billed by the Lender, of all remaining unpaid amounts. Payments will be due on the same day of each month starting on . PROVIDED, HOWEVER, that no payments shall be due during the months of
each year.
[ ] in a single payment of $ plus accrued interest and all other amounts due on
[ ] In addition, prior to the month of the first scheduled payment as stated above, interest shall be payable monthly on the unpaid balance and shall be due on the same day of the month as the later payments.
The date that the final payment is scheduled in this paragraph to be due is called the "Maturity Date" of this Note. If Borrower elects to purchase Credit Insurance and then elects to cancel the Credit Insurance, the Payment Schedule may change as described in the "Credit Insurance" paragraph.

**4. Automatic Payment Plan.** [ ] Not Applicable. [X] Borrower authorizes Lender to deduct the payments on this loan from Borrower's deposit account number ▇▇▇▇▇ on each scheduled payment due date.

**5. Variable Interest Rate.**
(a) **Automatic Payment Plan.** [ ] Not Applicable. [X] The interest rate on this loan may increase by 0.250 percentage points ("Automatic Payment Plan Discount") if participation in the automatic payment plan is discontinued for any reason, including: (a) if any Borrower chooses to terminate participation; (b) the deposit account identified above is closed; or (c) if there are not sufficient funds in the account to make the full monthly payment on three payment dates.
(b) **Employee Benefit.** [X] Not Applicable. [ ] Borrower is receiving an Employee Benefit Discount in the interest rate on this loan, which is available to employees and retired employees of PNC Financial Services Group and its affiliates (certain executive officers, directors and principal shareholders are not eligible). If Borrower's eligibility for the Benefit ceases at any time during the term of this loan, the interest rate stated in the section of this Note called "Borrower's Promise to Pay" will increase to a rate calculated by dividing that rate by 95%.

**6. Monthly Payment Changes.** If the interest rate on this loan increases, the payment amounts may increase (but will not decrease). Lender will determine the amount of equal monthly payments that would be sufficient to repay in full, by the Maturity Date, the unpaid principal balance that is expected to be due on the payment change date, at the new interest rate. If the payment amount will increase, Lender will notify Borrower of the effective date and amount of the new payment.

**7. Computing Interest.** Interest is charged on a daily basis, according to the outstanding balance subject to interest on each day of the loan term. The daily interest rate is equal to the annual interest rate in effect on that day divided by the number of days in that calendar year. Borrower agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge); early payments will result in less interest being charged. Early and/or late payments will cause the amount of the final payment to change.

**8. Application of Payments.** Lender will apply payments in the following order of priority: credit insurance premiums, if any, interest, late charges, fees, principal, and then Prepayment Fee, if applicable. All regular payments will be applied to the satisfaction of scheduled payments in the order in which they become due.

**9. Late Charge.** [ ] Not Applicable. [X] Borrower agrees that Lender may assess a late charge for any payment not paid in full within 15 days of its due date. The late charge will be the greater of $20.00 or 10% of the total amount of the payment which was not paid in full. No late charge will be due, however, if the reason that the payment is late is either: (a) attributable to a late charge assessed on a prior payment; or (b) because, after default by Borrower, the entire outstanding balance on this Note is due. No more than one late charge will be imposed for any single scheduled payment.

**10. Return Check Fee.** Borrower agrees that Lender may assess a fee of $30.00 if Borrower makes a payment with a check that is returned by the drawee for "not sufficient funds" in the account on which the check is written.

**11. Prepayment Fee.** [X] Not Applicable. [ ] If Borrower prepays the principal outstanding balance and all other amounts which Borrower has promised to pay (not including the Prepayment Fee) within three (3) years of the date of this Note, Lender may charge Borrower a Prepayment Fee of $ . If Lender charges a Prepayment Fee as authorized by this section, Lender may require the Prepayment Fee to be paid before the Loan is considered paid in full, and Lender may include the amount of the Prepayment Fee in response to a request by any person for a statement of the amount necessary to pay this loan in full (sometimes called a "payoff letter" or "payoff quote"). If Borrower prepays this loan in part, and is obligated to pay the remaining amounts due within three (3) years of the date of this Note, the Prepayment Fee will be due with and on the same date as the final payment of principal and interest.

**12. Waiver by Lender.** If Borrower has made or makes in the future another loan agreement with Lender, Lender might obtain a security interest in the principal dwelling of Borrower or someone else to secure that other loan agreement. That security agreement may provide that the principal dwelling secures not only that other loan agreement but also all other loan agreements of Borrower with Lender. Lender waives (gives up) any right to claim a security interest in the principal dwelling of any person to secure this Note unless the security interest is specifically given to secure this Note.

**13. Interest After Maturity and Judgment.** Unless prohibited by applicable law, interest at the rate provided in this Note shall continue to accrue on the unpaid balance until paid in full, even after (whether by acceleration or otherwise) maturity, and/or if Borrower becomes a debtor in an action filed under the Bankruptcy Code and/or if judgment is entered against Borrower for the amounts due. If at any time interest as provided for in this paragraph is not permitted by law, interest shall, in that event and at that time, accrue at the highest rate allowed by applicable law.

**14. Default.** (As used in this paragraph, the term "Borrower" includes Borrowers, Co-Makers, Guarantors, sureties, and any owner of property which is security for this Note.) Borrower will be in default:
(a) if Borrower does not make any payment before or on the date it is due; or
(b) if Borrower fails to keep any promise made in this Note or defaults in any other note, loan or agreement with Lender; or
(c) if anyone who signs the security agreement or a mortgage securing this Note breaks any promise made in the security agreement or mortgage; including but not limited to the promise not to sell, give away or transfer title to the property which is the subject of the mortgage or security interest; or
(d) if any property in which Lender has obtained a security interest to secure this Note is lost, stolen (and not recovered within a reasonable time) or destroyed; or
(e) if Borrower has made any untrue statement or misrepresentation in the credit application or any other certificate or document given or made for this loan; or
(f) upon the death of Borrower or any one of them, if there is more than one; or
(g) if Borrower provides Lender with false information or forged signatures at any time; or
(h) if a court with proper jurisdiction to do so finds that Borrower, or any one of them, is incapacitated or incompetent; or
(i) if Lender in good faith believes that the prospect of Borrower's paying this Note is impaired.

If Borrower is in default, the entire outstanding balance on this Note shall be immediately due, at the option of the Lender. This will happen without any prior notice to Borrower, or right to cure, except as may be required by law.

Borrower will also be in default:
(j) if Borrower becomes insolvent and/or cannot pay Borrower's debts as they become due; or
(k) if any other creditor tries by legal process to take any money or property of Borrower in the Lender's possession; or
(l) if Borrower files a bankruptcy petition or if anyone files an involuntary bankruptcy against Borrower; or
(m) if Borrower makes an assignment for the benefit of creditors, or any insolvency, reorganization, arrangement, debt adjustment, receivership, trusteeship, liquidation or other legal or equitable proceedings are instituted by or against Borrower; or
(n) if any judgment, tax lien, municipal charge or tax levy is filed or writ of execution is issued against Borrower.

If any event described in (j), (k), (l), (m) or (n) happens, the entire outstanding balance on this Note shall be immediately due without any prior notice to Borrower, or right to cure, except as may be required by law.

A default by Borrower on this Note is a default on every other note, loan or agreement of Borrower with Lender.

**15. General Waiver Provisions.** Borrower waives presentment for payment, demand, protest, notice of protest, dishonor and all other notices or demands in connection with the delivery, acceptance, performance, default or enforcement of this Note. Borrower further waives any right to require due diligence in collection by Lender. Any Borrower who is a resident of Virginia further waives the benefit of any exemptions under Virginia law as to the property in which the Lender has obtained a security interest to secure the obligations in this Note.

**16. Delay in Enforcement.** Lender can delay enforcing any rights under this Note without losing any rights. Lender's failure to enforce any right under this Note shall not act as a waiver of that right or preclude the exercise of that right in the event of a future occurrence of the same event. Lender can also extend the time allowed for making payments, and such extension shall not affect the obligations of any Borrower, whether or not that Borrower is given notice of the extension.

**17. Release of Some Borrowers or Some Security.** If there is more than one Borrower, each agrees to remain bound by this Note, although Lender may release any other Borrower or release or substitute any property which is security for the repayment of this Note. Borrower waives all defenses based on suretyship and impairment of collateral or security.

**18. Security Interest Charges.** Borrower agrees to pay any recording, filing, satisfaction and encumbrance fees which may be charged. The charges are to repay Lender for the fees paid to public officials to protect, continue, or release any security interest given in the security agreement or mortgage.

# Direct Installment Loan Disclosure and Note

**PNC BANK**

Borrower: ERIC S ANDERSON
SHARON E ANDERSON

Lender: PNC Bank, National Association

Date: 02/16/2007

## Direct Installment Loan Note—continued

19. **Prepayment.** Borrower may prepay, in full or in part, the amount owed on this Note at any time. On some loans, Borrower will have to pay a Prepayment Fee if Borrower prepays the loan in full; see the section of this Note called "Prepayment Fee". If Borrower prepays the loan in part, Lender, at Lender's option, may notify Borrower that Borrower must, and Borrower agrees that Borrower will, continue to make regularly scheduled payments until all amounts due under this Note are paid; this will cause the Maturity Date to occur sooner than it was originally scheduled to occur. If applicable, Borrower agrees to pay the Prepayment Fee with the final payment of principal and interest on the new Maturity Date.

If at any time there is a remaining balance due of $50.00 or less, Borrower agrees that Borrower will pay the remaining balance due plus, if applicable, the Prepayment Fee, on the next scheduled payment due date.

20. **If Lender Obtains a Security Interest to Secure Borrower's Payment of this Note, Borrower Makes the Following Additional Promises to Lender:**
    (a) if property insurance is required by a mortgage and/or security agreement securing the repayment of this Note and/or if flood insurance is required by federal law, BORROWER MAY OBTAIN THE INSURANCE FROM ANYONE OF BORROWER'S CHOICE subject to Lender's reasonable approval. If flood insurance is required, Borrower has been separately notified. The property insurance must cover loss of or damage to the collateral and must be in an amount sufficient to protect Lender's interests; flood insurance must be of the type and in the amount required by federal law;
    (b) Borrower agrees to provide Lender evidence of required insurance. All policies must name Lender as a loss payee/secured party and must provide for at least 10 days written notice to Lender of reduction in coverage or cancellation;
    (c) if Borrower fails to keep in force the required insurance and/or fails to provide evidence of such insurance to Lender, Lender may notify Borrower that Borrower should purchase the required insurance at Borrower's expense. If Borrower fails to purchase the insurance within the time stated in the notice and/or fails to provide evidence of such insurance to Lender, Lender may purchase insurance to protect Lender's interest, to the extent permitted by applicable law, and charge Borrower the cost of the premiums and any other amounts Lender incurs in purchasing the insurance. THE INSURANCE LENDER PURCHASES WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE LESS COVERAGE THAN INSURANCE BORROWER COULD PURCHASE OTHERWISE. Upon demand, Borrower promises to pay Lender the cost of insurance purchased and other amounts incurred by Lender. Borrower agrees that Lender may, if permitted by applicable law, add the cost of the insurance to the amounts on which interest is charged at the rate provided in this Note. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with Lender. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. If additional information is required concerning insurance or our affiliate arrangements, please contact Centralized Customer Assistance, 2730 Liberty Avenue, Pittsburgh, PA 15222;
    (d) to pay all taxes due on the collateral. If Borrower does not pay the taxes, Lender has the option to pay the taxes. Upon demand, Borrower promises promptly to repay to Lender any amounts paid by Lender for taxes;
    (e) if Lender gets a security interest in stock or securities, the value of the collateral may become insufficient to protect Lender. If that happens, Borrower agrees to deliver to Lender additional collateral which Lender believes will be enough to protect Lender;
    (f) to allow Lender the right to inspect the collateral at any reasonable time, and to maintain the collateral in good condition and repair; reasonable wear and tear excepted;
    (g) if amounts are advanced by Lender under this Note for taxes and/or insurance, Lender may, at its option, if permitted by applicable law, add the amounts so advanced to the outstanding balance and require repayment with interest by increasing the installment payments so that the outstanding principal balance is repaid in full in substantially equal installments on the due date stated in the payment schedule; and
    (h) Borrower's promises made and Lender's rights set forth in this section shall not merge with any judgment in any legal action and shall apply until all amounts owed are paid in full.

21. **Lender May Sign Borrower's Name to Insurance Checks.** Borrower gives Lender the right and power to sign Borrower's name on any check or draft from an insurance company. This is limited to a check or draft in payment of returned premiums, benefits under credit life insurance or credit disability insurance, and claims made under physical damage insurance and flood insurance covering property which is security for this loan. Borrower does not have the right to, and agrees that Borrower will not, revoke the power of Lender to make Borrower's endorsement. Lender may exercise the power for Lender's benefit and not for Borrower's benefit, except as otherwise provided by law.

22. **Costs of Collection.** If Lender files suit or takes action to collect this loan or protect the collateral or the Lender's security interest in it, Borrower agrees to pay Lender's costs and expenses to do so, if Lender is permitted by applicable law to require Borrower to pay those costs. Unless such action is taken in Ohio, this shall include reasonable attorneys' fees and expenses to the maximum amount permitted by applicable law.

23. **Security Interests in Deposits.** The Lender may set-off any amounts due and unpaid under this loan against any of Borrower's money on deposit with Lender. This includes any money which is now or may in the future be deposited with Lender by Borrower or with any co-depositor, including Borrower's spouse. This also includes any property, credits, securities, or money of the Borrower, which may at any time be delivered to or in the possession of the Lender. This may be done without any prior notice to Borrower.

24. **Assignment.** Borrower may not assign or otherwise transfer his rights under this Note to anyone else. Lender may sell, transfer, or assign this Note, and any security agreement and/or mortgage given to secure this Note, and Borrower's rights and obligations under this Note will continue unchanged.

25. **Multiple Parties.** If there is more than one Borrower, each agrees to be responsible to Lender, individually and together, for payment in full of this loan. Borrowers agree that payment of all or part of the proceeds of this Note to any Borrower or to anyone else at the direction of any Borrower will be the equivalent of payment to each Borrower and for the benefit of all Borrowers.

26. **Credit Insurance.** If Borrower has elected to purchase credit insurance, Borrower may cancel that insurance at any time without penalty. In the event of cancellation, the payment amounts shown in the "Payment Schedule" will not decrease; rather, the loan will be paid off more quickly since more of the payment will be directed to payment of the principal balance of the loan.

27. **Heirs and Personal Representatives Bound.** The provisions of this Note shall be binding upon the Borrower, and the heirs and personal representatives of the Borrower.

28. **Governing Law and Construction.** This Note has been accepted by Lender in Pennsylvania and all loans shall be extended by Lender to Borrower in Pennsylvania. Regardless of the state of Borrower's residence or the place to which Borrower submitted an application, Borrower agrees that the provisions of this Note relating to interest, charges and fees shall be governed by and construed in accordance with federal law and, as made applicable by federal law, Pennsylvania law. Unless preempted by federal law, other substantive terms and provisions shall be governed by and construed in accordance with the law of Pennsylvania; procedural matters relating to the enforcement of the obligations evidenced by the Note and matters related to the granting, perfection and enforcement of a security interest securing this Note, if any, shall be governed by the laws of the state where the enforcement, granting or perfection takes place.

29. **Communication Concerning Disputed Debts.** ALL COMMUNICATIONS BY BORROWER TO LENDER CONCERNING DISPUTED DEBTS, INCLUDING AN INSTRUMENT TENDERED AS FULL SATISFACTION OF THE LOAN, SHOULD BE SENT TO CENTRALIZED CUSTOMER ASSISTANCE, 2730 LIBERTY AVENUE, PITTSBURGH, PA 15222.

30. **Credit Reports.** BORROWER AUTHORIZES LENDER TO OBTAIN CREDIT REPORTS ON BORROWER FROM TIME TO TIME AT LENDER'S DISCRETION WHILE BORROWER HAS A LOAN OUTSTANDING WITH LENDER.

31. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS NOTE AND DISCLOSURE. BY SIGNING BELOW, BORROWER AGREES TO BE LEGALLY BOUND BY ALL THE TERMS AND CONDITIONS OF THIS NOTE. Each of the Borrowers guarantees that the signature of any Borrower is genuine.

_Eric S. Anderson_  2-16-07
Borrower's Signature  ERIC S ANDERSON  Date

_Sharon E Anderson_  2-16-07
Borrower's Signature  SHARON E ANDERSON  Date

32. **CO-MAKERS SEE NOTICE TO CO-SIGNER BELOW.** Any Borrower who is designated as a Co-Maker agrees to be equally responsible with all other Borrowers for the payment of this loan and performance of all promises in this Note.

Co-Maker's Signature _____ Date _____

Co-Maker's Signature _____ Date _____

---

**NOTICE TO CO-SIGNER**

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the Borrower. The Lender can use the same collection methods against you that can be used against the Borrower, such as suing you, etc. If this debt is ever in default, that fact may become a part of *your* credit record.



## CERTIFICATE

The undersigned, Janet L. Deringer, Assistant Corporate Secretary of The PNC Financial Services Group, Inc., does hereby certify as follows:

1. Effective December 12, 2008, First National Broadway Corp. merged with and into National City DND, Inc.

2. National City DND, Inc. was a wholly owned subsidiary of National City Corporation.

3. Effective December 31, 2008, National City Corporation merged with and into The PNC Financial Services Group, Inc. and National City DND, Inc. became a wholly owned subsidiary of The PNC Financial Services Group, Inc.

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and affixed the seal of this Corporation this 29th day of July, 2009.

*[Corporate Seal: The PNC Financial Services Group, Inc. — CORPORATE SEAL 1983 PENNSYLVANIA]*

_Janet L. Deringer_
Janet L. Deringer

The PNC Financial Services Group
One PNC Plaza 249 Fifth Avenue Pittsburgh Pennsylvania 15222.2707
www.pnc.com
M:\LGL\BOARD\CERT\NATIONAL CITY\FIRST NATIONAL BROADWAY CORP.doc